IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT J. LEDWITH,           )
          Petitioner,        )
                             )
          vs.                )  Civil Action No. 06-611
                             )  Chief Judge Donetta W. Ambrose
MS. BROOKS, ET AL.,          )  Magistrate Judge Lisa Pupo Lenihan
          Respondents.       )

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  RECOMMENDATION

        It is respectfully recommended that the Petition for
a Writ of Habeas Corpus be denied and that a certificate of
appealability be denied.

II.  REPORT

        Petitioner, Robert J. Ledwith, brings this habeas
corpus petition (Petition) pursuant to 28 U.S.C. § 2254
complaining that the Pennsylvania Board of Probation and Parole
(Board) improperly refused his application for release on
parole for unconstitutional reasons.  For the reasons set forth
below, the Petition should be denied as Petitioner has failed
to set forth any violations of his constitutional rights such
as would allow this court to provide him with federal habeas
corpus relief.

**A. Relevant Procedural History**

        Petitioner is a Pennsylvania prisoner currently
imprisoned at the State Correctional Institution at Albion,
Pennsylvania.  Petitioner was convicted of corruption of minors

on May 21, 2003 at Criminal Docket No. CP-0545 in the Court of Common Pleas of Philadelphia County, and sentenced to a term of from two and one-half (2 ½) to five (5) years imprisonment. His maximum date is May 20, 2008, and his minimum date was November 20, 2005.[1]  Following the expiration of his minimum sentence date, Petitioner was eligible for release on parole by the Pennsylvania Board of Probation and Parole (the Board).[2]

By notice dated August 25, 2005, the Board issued the following decision in regards to Oliver's parole application.

> As recorded on August 25, 2005, the Board of Probation and Parole rendered the following decision in your case:
>
> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act, the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that:  Your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled.  Therefore, you are refused parole/reparole at this time.  The reasons for the Board's decision included the following.

---

1.  As Respondent points out, in his petition, Petitioner cites to another sentence he was serving at the time he filed his petition at Criminal Docket CP 0517 in the Court of Common Pleas of Philadelphia County.  However, he no longer is serving that sentence as his maximum expiration date of November 18, 2006, has passed.  Thus, any claims as to that sentence now are moot.

2.  *See* 61 Pa. Stat. §331.21.

2

Your version of the nature and circumstances of the offense(s) committed.

Your refusal to accept responsibility for the offense(s) committed.

The recommendation made by the Department of Corrections.

Your need to participate in and complete additional institutional programs.

Your interview with the hearing examiner and/or board member.

You will be reviewed in or after February, 2007.

At your next interview, the Board will review your file and consider:

Whether you have participated in/successfully completed a treatment program for sex offenders.

Whether you have received/maintained a favorable recommendation for parole from the Department of Corrections.

Whether you have received/maintained a clear conduct record and completed the Department of Corrections prescriptive programs.

Attachment to Commw. Answer (doc. no. 10).

Petitioner informs this Court that he has complied with all of the institution's prescribed programs and additional institutional programs. Petitioner claims that the Board has abused its discretion and violated the law by failing to approve his parole application following the expiration of his minimum sentence.

## B. Exhaustion Requirement

The habeas corpus statute at 28 U.S.C. § 2254(b) requires a state prisoner to exhaust available state court remedies before seeking federal relief.  This exhaustion requirement serves to protect the interest of comity, which ensures that the state courts have the first opportunity to address and correct violations of state prisoners' federal rights.  Rose v. Lundy, 455 U.S. 509, 518 (1982); Preiser v. Rodriquez, 411 U.S. 475, 491 (1973).  Accordingly, before a federal court addresses the merits of a state prisoner's claims, constitutional and federal law issues first must have been fairly presented to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review.  *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  The petitioner has the burden of establishing that exhaustion has been met.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).  Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists.  Christy v. Horn, 115 F.3d

201, 206 (1997); <u>Doctor</u>, 96 F.3d at 681; <u>Carter v. Vaughn</u>, 62 F.3d 591, 594 (3d Cir. 1995).

In this action, it is unclear whether the Petitioner has exhausted his claims or even whether he has an available remedy to present his claims to the Pennsylvania courts.  *See* <u>DeFoy v. McCullough</u>, 393 F.3d 439 (3d Cir. 2005). The Habeas Corpus Statute allows a federal court to deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirements.  28 U.S.C. § 2254(b)(2) (as amended by The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).  Under this authority, the Court will review the merits of the Petitioner's claim.

### C. Availability of Federal Habeas Corpus Relief

A state prisoner may be granted federal habeas corpus relief only if he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2254(a).  <u>Smith v. Phillips</u>, 455 U.S. 209 (1982); <u>Geschwendt v. Ryan</u>, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).  Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before federal habeas relief may be granted.

<u>Engle v. Isaac</u>, 456 U.S. 107 (1982); <u>Wells v. Petsock</u>, 941 F.2d 253 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992).

Petitioner's habeas petition does not state a cognizable basis for federal habeas corpus relief because it fails to assert any constitutional violation associated with the Board's denial of his parole application.

### D. Due Process

Liberally construed, Petitioner may be trying to assert a violation of his right to due process. However, his assertions, taken as true, do not state a violation of his due process rights, either procedurally or substantively. "Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution. The pertinent language of the Amendment provides as follows.

> Section 1.   All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; <u>nor shall any State deprive any person of life, liberty, or property, without due process of law</u>; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1 (emphasis added).

The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause

requires the government to follow appropriate procedures to promote fairness in governmental decisions; the substantive aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. <u>Daniels v. Williams</u>, 474 U.S. 327, 329-33 (1986). (citations omitted.)

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. <u>Daniels v. Williams</u>, 474 U.S. 327, 339 (1986). If a person does not have a constitutionally-protected interest, he or she is not entitled to the procedural protections afforded by the Due Process Clause.

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by

its revocation is a serious deprivation requiring that the prisoner be accorded due process.  Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973).  Liberty interests that fall within this category include the revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778.  However, the granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally-protected liberty interest that is inherent in the Due Process Clause.  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

Moreover, the Pennsylvania Probation and Parole Act, 61 Pa. Stat. 331.1, *et. seq.*, does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole prior to the expiration of their maximum terms.[3]  Pennsylvania law unambiguously provides that a

---

3.  *See, e.g.*, McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Rogers v. Pennsylvania Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319 (1999) (holding that the grant of parole for Pennsylvania prisoners is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd.. of Probation and Parole, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and
(continued...)

prisoner is <u>not entitled</u> to release from prison until the expiration of his maximum sentence.[4]  Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term.  The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole.  Although a prisoner is <u>eligible</u> for parole at the end of his minimum term, nothing in Pennsylvania law or the United States Constitution requires a prisoner to be released at such time.[5]

As recently noted by the Court of Appeals for the Third Circuit:

> The Parole Board's consideration of Thorpe's parole applications is sufficient for Fourteenth Amendment due process purposes because "[t]here is no constitutional right or inherent right of a

_____

3.  (...continued)
prisoners have no guarantees that parole will ever be granted"), _appeal denied_, 637 A.2d 295 (Pa. 1993).

4.  A prisoner's sentence is his maximum term.  <u>Krantz v. Pennsylvania Bd. of Probation & Parole</u>, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984).  The significance of the minimum sentence is that it establishes a parole eligibility date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board.  _Id._

5.  The existence of a state parole system alone does not create a constitutionally-protected interest.  <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987).

> convicted person to be conditionally
> released before the expiration of a valid
> sentence." <u>Conn. Bd. of Pardons v.
> Dumschat</u>, 452 U.S. 458, 464 (1981) (quoting
> <u>Greenholtz v. Inmates of Neb. Penal. &
> Corr. Complex</u>, 442 U.S. 1, 7 (1979)).
> While "States may under certain
> circumstances create liberty interests
> which are protected by the Due Process
> Clause," <u>Sandin v. Conner</u>, 515 U.S. 472,
> 483-84 (1995), the Pennsylvania Supreme
> Court has long held that "a denial of
> parole does not implicate a
> constitutionally protected liberty
> interest."  <u>Coady v. Vaughn</u>, 564 Pa. 604,
> 770 A.2d 287, 291 (Pa. 2001); *see also*
> <u>Rogers v. Pa. Bd. of Prob. & Parole</u>, 555
> Pa. 285, 724 A.2d 319, 322-23 (Pa. 1999)
> (affirming Parole Board's discretion to
> grant or deny parole because "parole is a
> matter of grace and mercy shown to a
> prisoner who has demonstrated to the Parole
> Board's satisfaction his future ability to
> function as a law-abiding member of society
> upon release before the expiration of the
> prisoner's maximum sentence").

<u>Thorpe v. Grillo</u>, 80 Fed. Appx. 215, 219, 2003 WL 22477890, 3

(3d Cir. 2003).

The discussion above makes clear that Petitioner does

not have a constitutionally-protected liberty interest in

release on parole that arises under state law.  Because a

Pennsylvania prisoner has no liberty interest in obtaining

parole, he cannot complain of the constitutionality of

procedural devices attendant to parole decisions.  <u>Burkett v.

Love</u>, 89 F.3d 135, 141 (3d Cir. 1996); <u>Rodgers v. Parole Agent

SCI-Frackville, Wech</u>, 916 F. Supp. 474, 476 (E.D. Pa. 1996).

Accordingly, Petitioner cannot obtain habeas corpus relief on

the basis of a violation a his procedural due process rights
with respect to denial of his application for parole.

The constitutional right to "substantive due process"
protects individuals against arbitrary governmental action,
regardless of the fairness of the procedures used to implement
them.[6]  Several courts, including the Court of Appeals for the
Third Circuit, recognize that, even though an inmate has no
protectable liberty interest in parole that implicates
procedural due process, his substantive due process rights may
be violated if parole is denied by arbitrary government
action.[7]  In this regard, courts have determined that decisions
to grant or deny parole may violate a prisoner's right to
substantive due process if such decisions are based on
arbitrary and capricious factors.  The Supreme Court has
declined to set forth a precise rule that defines the scope of
impermissible "arbitrary" conduct for purposes of applying the
substantive component of the Due Process Clause.  Nonetheless,

---

6.  *See also* <u>Collins v. Harker Heights</u>, 503 U.S. 115, 126
(1992) (the Due Process Clause was intended to prevent
government officials from abusing power, or employing it as an
instrument of oppression); <u>Wolff v. McDonnell</u>, 418 U.S. 539,
558 (1974) ("The touchstone of due process is protection of the
individual against arbitrary action of government.").

7.  *See, e.g.*, <u>Monroe v. Thigpen</u>, 932 F.2d 1437, 1442 (11th
Cir. 1991); <u>Newell v. Brown</u>, 981 F.2d 880, 886 (6th Cir. 1992),
*cert. denied*, 510 U.S. 842 (1993); <u>Block v. Potter</u>, 631 F.2d
233, 236 (3d Cir. 1980); <u>Carter v. Kane</u>, 938 F. Supp. 282 (E.D.
Pa. 1996).

the Court recently clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

Liberally construed and taken as true, Petitioner does not state a violation of his substantive due process rights with respect to the Board's action in refusing to grant his parole application. As stated above, the Board is vested with broad discretion to grant or deny parole. In making such decisions, the Board's foremost consideration is the protection of the safety of the public. 61 Pa. Stat. §331.1. In granting parole, the Board is required to consider the nature and character of the offense committed, the general character and history of the prisoner, the written or personal statement or testimony of the victim or victim's family, and the recommendations of the trial judge, the district attorney and of each warden or superintendent who has had control over the applicant. 61 Pa. Stat. § 331.19. Moreover, the Board is prohibited from granting parole unless the Commonwealth will not be injured thereby. See 61 Pa. Stat. § 331.21(a).

In denying a prisoner's substantive due process claim in a similar context, the United States District Court for the Eastern District of Pennsylvania held as follows.

In Pennsylvania, the Board, in exercising its discretion, is expressly directed to investigate the "mental and behavior condition and history" of a parole applicant and to consider the "character of the offense committed."  61 Pa.C.S.A. § 331.19.  These criteria bear a rational relation to rehabilitation and deterrence. The reasons given by the Board for denial of parole--(1) substance abuse, (2) assaultive instant offense, (3) very high assaultive behavior potential, (4) victim injury, and (5) your [petitioner's] need for counseling and treatment--and the documents reviewed by the Board, disclosed that it considered those factors in exercising its discretion.  The Court does not find that there has been any abuse of discretion.

Bonilla v. Vaughn, 1998 WL 480833, at *10 (E. D. Pa. Aug. 14, 1998).

In Petitioner's case, the Board's reasons for denying his parole application are, on the face of them, in accordance with its statutory mandate to protect the well being of the Commonwealth's citizens.  Without a doubt, the safety of the public and the interests of the Commonwealth are injured by releasing prisoners who require additional treatment programs or other types of counseling.  In reviewing the Board's exercise of discretion in denying an application for parole, this Court's only role "is to insure that the Board followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious nor based on impermissible considerations."  Block, 631 F.2d at 236.

The Board identified legitimate reasons for exercising its discretion in denying Petitioner's applications for early release from prison.  In considering Petitioner's ability to serve the remainder of his prison sentence on parole, the Board followed its statutory directive.  Petitioner does not allege that he was denied parole based on unconstitutional criteria such as race or religion.  Nothing in the record before this court suggests that the Board exercised its discretion in either an arbitrary or capricious manner.  Although Petitioner alleges that he completed all of his prescribed treatment programs, the Board clearly indicated that he needed to participate in and complete additional institutional programs.  "[T]he Board's decision that Petitioner may require continued participation in a prescriptive program does not constitute an arbitrary or capricious decision."  Banks v. Pennsylvania Bd. of Probation and Parole, 2004 WL 906296, at *4 (E. D. Pa. April 28, 2004).  As such, Petitioner has failed to demonstrate that he is entitled to habeas corpus relief under the substantive prong of the Due Process Clause.  Accord Shaffer v. Meyers, 338 F.Supp.2d 562, 566 (M.D. Pa. 2004) ("On the basis of the record before the court, and the stated reasons for the Parole Board's denial of parole, the court concludes that there was a rational basis for the denial of parole."); Cohen v. Pennsylvania Bd of

14

<u>Probation and Parole</u>, 1998 WL 834101 (E.D. Pa. Dec. 2, 1998) (holding that the denial of parole despite recommendation from prison psychiatrist does not state a violation of substantive due process).[8]

### E. Equal Protection

Nor does Petitioner allege a violation of his equal protection rights.  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' "  <u>Artway v. Attorney General of State of N.J.</u>, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting <u>City of Cleburne, Tex. v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985)).

The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification and the nature of the rights involved.  Classifications involving suspect or quasi-suspect class, or actions that impact certain fundamental constitutional rights, are subject to heightened or "strict"

---

8.   *See also* <u>Bonilla v. Vaughn</u>, 1998 WL 480833 (E.D. Pa. Aug. 14, 1998); <u>Maloy v. Vaughn</u>, 1998 WL 426561 (E.D. Pa. July 28, 1998); <u>Bradley v. Dragovich</u>, 1998 WL 150944 (E.D. Pa. Mar 27, 1998).

scrutiny.  City of Cleburne, 473 U.S. at 439.  Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge.  F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (state action that does not affect a suspect category or infringe on a fundamental constitutional right must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification); Chapman v. United States, 500 U.S. 453, 465 (1991).

With respect to the first issue, it is well settled that prison inmates are not a suspect class.  *See e.g.,* Nicholas v. Tucker, 114 F.3d 17, 20 (2d Cir. 1997) (inmates are not suspect class so as to require more exacting scrutiny), *cert. denied*, 523 U.S. 1126 (1998); Hampton v. Hobbs, 106 F.3d 1281, 1286 (6th Cir. 1997); Zehner v. Trigg, 133 F.3d 459, 463 (7th Cir. 1997).  Although Petitioner's DOC records indicate that he is Black, he has not claimed that his parole denial was based on his race; nor does the record support such an allegation.  In addition, there is no fundamental constitutional right to parole.  *See* Fox v. Stotts, 203 F.3d 834 (Table), 2000 WL 84899, *2 (10th Cir. Jan. 27, 2000); Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989)

16

(stating that prisoners are not a suspect class and parole consideration is not a fundamental right requiring a higher level of scrutiny).  Therefore, the Board's parole guidelines are subject to the general rule that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.  City of Cleburne, 473 U.S. at 440.

The Board's decision requiring additional treatment before granting Petitioner's application for parole bears a rational relationship to the legitimate state interest of ensuring public safety.  Accordingly, Petitioner has not demonstrated that he is entitled to habeas corpus relief under the Equal Protection Clause.

### F. Fifth Amendment

As a final matter, Petitioner's claim broadly may be construed as a violation of his Fifth Amendment Right against self-incrimination.  In this regard, the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  This right is referred to as the Fifth Amendment privilege against self-incrimination. The Supreme Court has instructed that "[t]he [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to

17

him in any other proceeding, civil or criminal, formal or
informal, where the answers might incriminate him in future
criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77
(1973).  Furthermore, the Fifth Amendment privilege provides
protection against the imposition of substantial penalties on a
person who decides to invoke his right against
self-incrimination. Minnesota v. Murphy, 465 U.S. 420, 434
(1984).

        Petitioner does not state a violation of his Fifth
Amendment rights, however, as the Board's "acceptance of
responsibility" requirement would not be considered "compelled"
testimony within the meaning of the Fifth Amendment.  In this
regard, in Ohio Adult Parole Authority v. Woodard, 523 U.S.
272, 286 (1998), a unanimous Court held that a voluntary
interview with the Ohio Clemency Board did not amount to
"compelled" testimony for purposes of the Fifth Amendment.  In
making this conclusion, the Court observed that the petitioner
already was under a lawfully-imposed sentence of death.  If
clemency was granted, he would have obtained a benefit; if it
was denied, he would be in no worse position than he was
before.  The Court concluded that the pressure to speak in the
hope of improving his chance of being granted clemency did not
make the interview compelled.  Id. at 285-286.

18

In <u>McKune v. Lyle</u>, 536 U.S. 24 (2002), the Supreme Court extended this principal to participation in sex offender treatment programs (SOTP).  In that case, the Supreme Court held that the adverse consequences faced by a state prisoner for refusing to make admissions required for participation in a SOTP were not so severe as to amount to compelled self-incrimination because the prisoner's refusal did not extend his prison term or affect his eligibility for good time credits.

Similarly, in the case at bar, Petitioner is serving a lawfully-imposed sentence:  if parole is granted, he would obtain a benefit; if it is denied, he is in no worse position than he was before.  The pressure to accept responsibility for the crimes for which he was convicted in order to improve his chances for parole does not make his admissions "compelled" for purposes of the Fifth Amendment.  *See* <u>Thorpe v. Grillo</u>, 80 Fed. Appx. 215, 2003 WL 22477890 (Table) (3d Cir. 2003) (holding that the Pennsylvania Department of Corrections (DOC) policy of excluding from the SOTP those inmates who do not admit guilt to the offense did not violate an inmate's Fifth Amendment right against self-incrimination); <u>Ainsworth v. Stanley</u>, 317 F.3d 1 (1st Cir. 2002) (upholding District Court decision holding no 5th Amendment violation when parole is denied based on inmate's

inability to participate in SOTP due to failure to admit to criminal offenses).

Moreover, notwithstanding the prohibition on the state of penalizing a person who invokes his Fifth Amendment right, prison officials may constitutionally deny benefits to a prisoner who, by invoking his privilege against self-incrimination, refuses to make statements necessary for his rehabilitation, as long as their denial is based on the prisoner's refusal to participate in his rehabilitation and not his invocation of his privilege. *See, e.g.,* <u>Doe v. Sauer</u>, 186 F.3d 903, 906 (8th Cir. 1999); <u>McMorrow v. Little</u>, 109 F.3d 432, 436 (8th Cir. 1997) (citing <u>Asherman v. Meachum</u>, 957 F.2d 978, 980-83 (2d Cir. 1992)).

In light of the authority discussed above, this Court concludes that the Petition does not set forth any basis upon which this court can grant federal habeas corpus relief.

### G. Certificate of Appealability

Section 102 of the Antiterrorism Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Petitioner

20

has not demonstrated that he suffered any violation of his constitutional rights with respect to the denial of his parole application.   Accordingly, a certificate of appealability should be denied.

**III. <u>CONCLUSION</u>**

For the foregoing reasons, this Court respectfully recommends that this Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.   Any party opposing the objections shall have ten (10) days from the date of service of the objections to respond thereto.   Failure to timely file objections may constitute a waiver of any appellate rights.

Dated: February 22, 2007

Lisa Pupo Lenihan
U.S. Magistrate Judge

cc:  The Honorable Donetta W. Ambrose
     United States District Judge, Chief


     Robert J. Ledwith
     FG-2757
     SCI Albion
     10745 Route 18
     Albion, PA 16475-0002


     Mary Lynch Friedline, Esquire

21

```
Office of the Attorney General
5th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219
```